IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAWSON INFRASTRUCTURE GROUP, INC., and LUNA SQUARES, LLC<br><br>Plaintiffs,<br>v.<br><br>CLEANSPARK, INC., and CSRE PROPERTIES SANDERSVILLE, LLC<br>Defendants. | Civil Action No. 1:24-cv-5379<br><br>JURY TRIAL DEMANDED |

Plaintiffs Mawson Infrastructure Group, Inc. ("Mawson"), and Luna Squares, LLC (f/k/a Innovative Property Management, LLC) ("Luna") (collectively, "Plaintiffs"), by its attorneys complaining of CleanSpark, Inc. ("CleanSpark"), and CSRE Properties Sandersville, LLC ("CSRE") (collectively, "Defendants"), set forth and allege as follows:

## NATURE OF THE ACTION

1. This is an action for non-payment of a "Megawatt Earnout" pursuant to a Purchase and Sale Agreement (as more fully described below) by and among the above-named parties, which Plaintiffs timely and reasonably provided notice of to Defendants, but for which Defendants improperly and unreasonably refused and failed to pay.

2. As a result of Defendants' wrongful conduct and breach of contract, Plaintiffs have sustained general, special, incidental, and consequential multi-million-dollar damages in an amount to be proven at trial. Accordingly, Plaintiffs seek such monetary damages in an amount to be proven at trial.

## THE PARTIES

3. Plaintiff Mawson is a corporate entity and Provider of Infrastructure & Data

Mining Services headquartered at 950 Railroad Avenue, Midland, Pennsylvania 15059, and incorporated in the State of Delaware.

4. Plaintiff Luna is a corporate entity headquartered at 950 Railroad Avenue, Midland, Pennsylvania 15059, and incorporated in the State of Delaware.

5. Upon information and belief, Defendant CleanSpark is a corporation and Provider of Infrastructure & Data Mining Services headquartered at 2370 Corporate Circle, Suite 160, Henderson, Nevada 89074, and incorporated in the State of Nevada.

6. Upon information and belief, Defendant CSRE is a limited liability company headquartered at 2380 Godby Road, College Park, Georgia 30349, and incorporated in the State of Georgia.

## JURISDICTION AND VENUE

7. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 6 inclusive hereof, as if the same were more fully set forth at length herein.

8. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(1) and under principles of supplemental jurisdiction (28 U.S.C. § 1367) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs. Furthermore, venue is proper as the Purchase and Sale Agreement at issue requires Plaintiffs and Defendants to submit to the jurisdiction of a court of competent jurisdiction in the State of New York.

## FACTS

9. At all times material hereto, Plaintiff Luna was the lessee of a certain lease agreement of 16.35 acres of land, located at 2015 George Lyons Parkway, Sandersville, Washington County, Georgia 31082 (the "Initial Lease") dated August 12, 2020, between the Development Authority of Washington County ("Development Authority") and Luna, as amended by that certain First Amendment to Lease Agreement and Exercise of Option to Lease on an Additional Four Adjoining Acres, dated February 23, 2021 (the "First

Amendment"), and Second Amendment to Lease Agreement, dated August 24, 2021 (the "Second Amendment," which together with the Initial Lease, First Amendment and Second Amendment, are collectively referred to as the "Lease" and real property subject to the Lease, referred to as the "Land").

10. On September 8, 2022, Plaintiffs Mawson and Luna and Defendants entered into the Purchase and Sale Agreement (the "Agreement") incorporated into this pleading by reference and identified as "Exhibit A" to this Complaint), whereby Luna agreed to assign and sell to Defendant CSRE Luna's leasehold interests in the Lease, all in accordance with the terms and conditions described in the Agreement.

11. As part of the transaction, Mawson, the sole shareholder and parent company of Luna, sold and caused one or more of its affiliates to sell mining equipment as set forth in Article 21 of the Agreement, which was a material aspect of the entire transaction, and Mawson benefitted from the transaction and was a party to the Agreement.

12. CSRE is a subsidiary of CleanSpark, and CleanSpark benefitted from CSRE's purchase of the Property and, accordingly, agreed to pay a portion of the consideration therefor, in accordance with the terms and conditions described within the Agreement.

13. On September 8, 2022, the Agreement was executed with a Closing Date of October 8, 2022, and thereafter Defendants took possession of the Leased premises in accordance with the Agreement and Lease terms.

14. As additional material consideration for Plaintiffs entering into the Agreement, Article 19.02 of the Purchase and Sale Agreement states in pertinent part:

"19.02 Megawatt Earnout.

- (a) The Seller shall be entitled to an additional Two Million and No/100 Dollars ($2,000,000.00) ("Megawatt Earnout"), if and only if, the following condition is satisfied: the Purchaser receives written confirmation reasonably acceptable to Purchaser that it will be able to utilize at least an additional 150 MW of power on the Land (the "Power Confirmation"), beyond the current 80MW of power on the Land

as of the Effective Date. Once the Power Confirmation condition has been satisfied, the Megawatt Earnout payment shall be made on the later of the following events to occur: (x) sixty (60) days after Closing or (y) ten (10) Business Days after satisfaction of the Power Confirmation condition. Whichever party receives the Power Confirmation must immediately notify the other party."

- (c) If a Power Confirmation is not received by the 6th month anniversary of the Closing Date, then Purchaser is not obligated to pay any Megawatt Earnout to Luna and it is null and void and of no further force and effect.

15. Importantly, the obligation to obtain Power Confirmation was not a unilateral effort, **but a mutual one**. Article 19.02 Megawatt Earnout, subpart (d), unequivocally states:

- "(d) The Parties must use best efforts to obtain Power Confirmation of the additional 150 MW."

16. On October 7, 2022, responding to a written request by CleanSpark letter dated October 6, 2022, the City of Sandersville confirmed that it would provide to CleanSpark "availability of 150MW of additional power subject to energy being available from MEAG as planned". (*See* Exhibits B and C to this Complaint).

17. In addition, Mawson through its General Counsel Thomas Hughes timely provided written notice on December 5, 2022 to CleanSpark and CSRE that the required additional 150 MW of power to the property had been confirmed with the applicable municipal power authority, the Municipal Electric Authority of Georgia ("MEAG"). This notice was provided well within the time constraints of Article 19.02. *See* Exhibit D to this Complaint.

18. On December 8, 2022, Defendants, through their General Counsel Rachel Silverstein, claimed that Mawson's notice was not "reasonably acceptable" to them and that it did not "meet [their] satisfaction." *See* Exhibit E to this Complaint. Defendants' reply was made in bad faith in an effort to avoid paying an amount they owed and for

which the conditions had been met. Their claim that Mawson's notice was not "reasonably acceptable" is itself not reasonable, viewed either objectively or subjectively.

19. Moreover, at no time thereafter did Defendants use any efforts, much less their "best efforts" to obtain their further requested (*albeit already provided*) Power Confirmation.

20. In addition, CleanSpark stated in multiple public filings with the U. S. Securities and Exchange Commission ("SEC") that, *inter alia*, it had not only obtained confirmation of 150 MW of power utilization, but that it was acting on this confirmation. For example, in its press release dated September 9, 2022, Defendant publicly announced, "There is an ongoing effort to expand the facility by an additional 150 MW by late 2023." *See* Exhibit F to this Complaint.

21. In a public 8-K filing on October 8, 2022 with the SEC CleanSpark publicly stated its acknowledgment of the earnout provision in the Agreement and efforts and commitment to pay "an additional $2.0 million in a seller-financed earn-out payable at least 60 days post-closing if the Property Purchaser is able to utilize at least an additional 150 MW of power on the Property by the six month anniversary of the Closing Date." *See* Exhibit G to Complaint (CleanSpark's October 08, 2022 8-K).

22. Mawson again notified CleanSpark of its demand for the $2,000,000.00 earnout on June 7, 2023. *See* Exhibit H to this Complaint.

23. On June 13, 2023, CleanSpark's CEO Zachary Bradford sent an email to Mawson, agreeing to pay the sum of $2,000,000.00 "by the end of the week." *See* Exhibit H to this Complaint.

24. On January 12, 2024, Luna and Mawson submitted a demand for arbitration of this dispute with the American Arbitration Association ("AAA"), which was accepted by the AAA on January 18, 2024. After objection to the arbitration proceedings for lack of jurisdiction was raised by the Defendants and following due proceedings, the AAA arbitrator dismissed the arbitration proceedings solely on the grounds of AAA's lack of

jurisdiction to hear Plaintiffs' claims, ruling the Agreement's arbitration clause to be sufficiently ambiguous to deny jurisdiction and directed the parties to resolve any disputes through the civil court system.

25. Plaintiffs thus now seek to enforce the parties' agreement here in the District Court of the Southern District of New York – a jurisdiction and venue to which all parties have consented.

### COUNT I: BREACH OF CONTRACT

26. Plaintiffs re-allege the allegations set forth in Paragraphs 1-25 above and incorporate the same herein by reference.

27. Plaintiffs fully performed their obligations under the Agreement, including Article 19.02 thereof, providing for notice "reasonably acceptable to [Defendant] Purchaser that it will be able to utilize at least an additional 150 MW of power on the Land" triggering the Agreement's Article 19.02 Megawatt Earnout provision and thus entitling Plaintiffs to the $2,000,000.00 Megawatt Earnout payment from the Defendants.

28. At all material times, Defendants knew and cannot now in good faith claim that the notice provided to them by Plaintiffs was not reasonable or would have been reasonably acceptable to another party in a similar position.

29. Defendants repeatedly refused in bad faith to accept notice pursuant to Article 19.02, whether by Plaintiffs or by third parties, namely, the City of Sandersville, Georgia and MEAG.

30. Defendants thus failed to perform its contractual obligation by failing to remit payment of $2,000,000.00 to Plaintiffs in accordance with the Agreement.

31. Defendants have materially breached their agreement with Plaintiffs.

32. Defendants' material breach has caused Plaintiffs $ 2,000,000.00 in compensatory damages.

33. Additionally, implicit in every contract is a covenant of good faith and fair dealing. Defendant's bad faith and unjust refusal to pay for the full loss has thus

compelled Plaintiffs to bring this suit.

34. Upon information and belief, as of July 16, 2024, Plaintiff has additionally suffered consequential damages due to its lost profits caused by Defendants' failure to remit payment, in a multi-million-dollar amount to be determined at trial. Had Defendants timely paid the earnout obligations of the Agreement, Plaintiffs would have been able to utilize the funds in many ways, including but not limited to, buying other land for development, purchasing more advanced machinery to increase Bitcoin production, or further developing its existing infrastructure at its other facilities and thereby generating significantly more revenue from increased mining activities and colocation agreements.

35. Defendants are liable for not only Plaintiffs' full loss, but for Plaintiffs' consequential damages, including Plaintiffs' attorney's fees, costs, and expenses, which were a reasonably foreseeable consequence of Plaintiffs being forced to file for both arbitration and for legal suit as a result of Defendant's bad faith refusal to pay for the full loss.

36. Additionally, Defendant is liable to pay Plaintiffs punitive damages due to Defendant's bad faith.

**WHEREFORE**, Plaintiffs demand that a judgment be entered against Defendants in the minimum amount of $2,000,000.00 in compensatory damages, together with all consequential damages in an amount to be determined at trial, with pre- and post-judgment interest thereon at the statutory rate; and punitive damages in an amount to be determined at trial; together with attorneys' fees, the costs and disbursements of the within action, and such other, further and different relief which this Court deems just and proper.

Dated this 16th day of July, 2024.                                Respectfully submitted,

/s/ Adam C. Yaeger
Adam C. Yaeger
Kaliste Saloom
Mawson Infrastructure, Inc.

950 Midland Avenue
Midland, PA, 15059
Adam.Yaeger@mawsoninc.com
Kaliste.Saloom@Mawsoninc.com
legal@mawsoninc.com