UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MAWSON INFRASTRUCTURE GROUP,
INC., and LUNA SQUARES, LLC,

      Plaintiffs,

 -v-                                                         No. 24-CV-5379-LTS

CLEANSPARK, INC., and CSRE
PROPERTIES SANDERSVILLE, LLC,

      Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

Mawson Infrastructure Group, Inc. ("Mawson") and Luna Squares, LLC ("Luna" and, collectively, "Plaintiffs") bring this action against CleanSpark, Inc. ("CleanSpark") and CSRE Properties Sandersville, LLC ("CSRE" and, collectively, "Defendants"), asserting a breach of contract claim and seeking various types of monetary relief. The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1332.

Pending before the Court is Defendants' motion to dismiss Plaintiffs' complaint (docket entry no. 4 (the "Complaint" or "Compl.")) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Docket entry no. 16 (the "Motion").) The Court has reviewed the parties' submissions thoroughly and, for the following reasons, Defendants' Motion is granted in part and denied in part.

## BACKGROUND

The following facts are drawn from the Complaint and the attached exhibits, and, to the extent they are well-pleaded, presumed true for purposes of this Motion.

Plaintiff Mawson is a corporate entity and provider of infrastructure and data mining services, headquartered in Pennsylvania and incorporated in Delaware.  (Compl. ¶ 3.) Plaintiff Luna is a corporate entity also headquartered in Pennsylvania and incorporated in Delaware.  (Id. ¶ 4.)  Mawson is the sole shareholder and parent company of Luna.  (Id. ¶ 11.) Defendant CleanSpark is a corporation and provider of infrastructure and data mining services, headquartered and incorporated in Nevada.  (Id. ¶ 5.)  Defendant CSRE is a limited liability company and subsidiary of CleanSpark, headquartered and incorporated in Georgia.  (Id. ¶¶ 6, 12.)

On August 12, 2020, Luna entered a lease agreement with the Development Authority of Washington County for land located at 2015 George Lyons Parkway, Sandersville, Washington County, Georgia, 31082 (the "Premises").  (Id. ¶ 9.)  On September 8, 2022, Mawson and Luna entered into a Purchase and Sale Agreement (docket entry no. 4-1 (the "Agreement")), whereby Luna agreed to assign and sell its leasehold interests in the leased Premises to CSRE, in accordance with the terms and conditions set forth in the Agreement.  (Id. ¶ 10.)  The closing date of the Agreement was October 8, 2022, after which time Defendants took possession of the leased Premises.  (Id. ¶ 13.)

The Agreement included a provision entitled "Megawatt Earnout," which provided that:

> [Plaintiffs] shall be entitled to an additional Two Million and No/100 Dollars ($2,000,000.00) ("Megawatt Earnout"), if and only if, the following condition is satisfied: [CSRE] receives written confirmation reasonably acceptable to [CSRE] that it will be able to utilize at least an additional 150 MW of power on the Land (the "Power Confirmation"), beyond the current 80MW of power on the Land as of the Effective Date . . . . Whichever party receives the Power Confirmation must immediately notify the other party.

(Agreement § 19.02(a).)  This provision of the Agreement, Section 19.02, further stipulated that "[t]he Parties must use best efforts to obtain Power Confirmation of the additional 150 MW." (Id. § 19.02(d).)  If the Power Confirmation was not received within six months of the closing date of the Premises, i.e., by April 8, 2023, then CSRE would not be obligated to pay the Megawatt Earnout.  (Id. § 19.02(c); Compl. ¶ 13.)

On August 2, 2022, prior to the execution of the Agreement, the administrator for the city in which the Premises were located, Sandersville (the "City"), wrote to Mawson explaining that, on August 30, 2021, the City had written a letter to the Municipal Electric Authority of Georgia ("MEAG"), requesting that a new substation be located in the "Fall Line Industrial Park" to serve Mawson, specifying requirements including a 150 MW expected load amount.  (Docket entry no. 4-4, at 2.)  The City further explained that MEAG had responded to the request, and begun the development of a substation that would provide Mawson with the requested 150 MW load, with an expected completion date in 2023.  (Id.)

On October 6, 2022, CleanSpark wrote to the City requesting, inter alia, confirmation that the City would work with CSRE in good faith in the coming months to address adjustments to Mawson's prior contract for electric power service that CleanSpark characterized as "critical to CSRE's long-term growth," including "the 150MW of additional power within the [contract], subject to such energy being available from MEAG, as planned."  (Docket entry no. 4-2.)  The City responded on October 7, 2022, providing the requested confirmation that the City would work with CleanSpark in good faith in the following months on a mutually agreeable contract to address "[a]vailability of 150 MW of additional power subject to energy being available from MEAG as planned."  (Docket entry no. 4-3.)

On December 5, 2022, Mawson's General Counsel provided written notice to Defendants that the requisite 150 MW of power to the Premises had been confirmed with MEAG, attaching the August 2, 2022 letter to the notice. (Compl. ¶ 17.) On December 8, 2022, General Counsel for CleanSpark responded, asserting that Mawson's notice was not "reasonably acceptable" within the meaning of the Megawatt Earnout provision and did not "meet [their] satisfaction." (Comp. ¶ 18 (citing docket entry no. 4-5).) Plaintiffs allege that this reply "was made in bad faith in an effort to avoid paying an amount they owed and for which the conditions had been met," and that such notice was "reasonably acceptable." (Compl. ¶ 18.) Plaintiffs further allege that, at no time thereafter "did Defendants use any efforts, much less their 'best efforts'[,]" as required by the Agreement, "to obtain their further requested (<u>albeit already provided</u>) Power Confirmation." (Id. ¶ 19 (emphasis in original).)

On June 7, 2023, Mawson again notified CleanSpark of its demand for the Megawatt Earnout. (Id. ¶ 22.) On June 13, 2023, the Chief Executive Officer ("CEO") of CleanSpark, Zach Bradford ("Bradford") responded, asserting that Defendants "still hold [their] position that [they] are not currently obligated to pay the $2 million" because, he asserted, Defendants had not, prior to April 8, 2023, received a satisfactory acknowledgment in writing that Defendants would receive the requisite 150 MW of power on the Premises. (Docket entry no. 4-8, at 1.) Bradford further asserted that Plaintiffs "<u>know</u> that [Defendants] believe [they] will receive the 150 MW . . . . [t]he question is not a question of <u>if</u> but <u>when</u>." (Id. (emphasis in original).) Bradford explained that Defendants had "been very clear on why [an acceptable written document had] not been received and therefore why the [Megawatt Earnout] trigger ha[d] not occurred," specifically that there was an ongoing contract dispute between the City and MEAG, and that the City had requested that Defendants not sign a power contract in the interim

because it would harm the City's negotiations. (Id.) On behalf of CleanSpark, Bradford nevertheless agreed in his June 2023 email to pay the two million dollars to prevent Mawson from "drafting [a public] disclosure that CleanSpark [did] not believe that it [would] receive 150MW at Sandersville[,]" as Mawson asserted it would do in the absence of an Earnout payment. (Id. at 1-2; Compl. ¶ 23.)

Defendants never paid the Megawatt Earnout and, on January 12, 2024, Plaintiffs submitted a demand for arbitration of the instant dispute. (Compl. ¶ 24.) The arbitration proceeding was eventually dismissed based on the arbitrator's finding that the Agreement's arbitration clause was "sufficiently ambiguous to deny jurisdiction." (Id.) Plaintiffs thereafter initiated the instant action on July 16, 2024,[1] asserting a single claim for breach of contract premised on the foregoing allegations. (See Compl.) On September 13, 2024, Defendants moved to dismiss the Complaint in its entirety, with prejudice. (See Motion.)

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). This requirement is satisfied when the factual content of the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," id. (citation omitted), but a pleading that contains only "naked assertion[s]" or "a formulaic recitation of the elements of a cause of action" does not suffice. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any

---

[1] Although the instant action was opened on July 16, 2024, the operative Complaint was not filed until July 20, 2024. (See docket entry nos. 1-3.)

statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).

To state a claim for breach of contract under New York law, a plaintiff must allege: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 188-89 (S.D.N.Y. 2011) (quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996)). Plaintiffs appear to articulate two theories of breach of the Agreement by Defendants: (1) failure to accept Plaintiffs' December 2022 notice, in view of the City's October 2022 letter to Defendants, as sufficient to satisfy Article 19.02(a) of the Agreement (Compl. ¶¶ 16-18; docket entry no. 21 ("Pls. Mem.") at 4-5, 7); and (2) failure to use best efforts to obtain a Power Confirmation, as required by Article 19.02(d) (Compl. ¶¶ 19; Pls. Mem. at 7). The Court reviews each theory in turn.

Receipt of Power Confirmation

Defendants predominantly dispute that the second and third elements of a breach of contract claim—adequate performance and breach—are met here. Where a contract conditions performance upon the satisfaction of one party, there is a presumption in favor of an objective test of reasonable satisfaction, i.e., a "reasonable man" standard. See Misano di Navigazione, SpA v. United States, 968 F.2d 273, 274 (2d Cir. 1992); RESTATEMENT (SECOND) OF CONTRACTS § 228 cmt. b; see also Blask v. Miller, 588 N.Y.S.2d 940, 942 (N.Y. App. Div., 3d Dep't 1992) ("[W]hen contract duties are contingent upon a particular condition being 'satisfactory' to one party . . . that party's rejection of the condition is to be judged by an objective standard of reasonableness."). Regardless of the standard of interpretation, "the

exercise of judgment must be in accordance with the duty of good faith and fair dealing or the agreement is illusory." Misano, 968 F.2d at 275 (citation omitted).

The Court finds that Plaintiffs have plausibly stated a claim for breach of contract premised on the December 2022 notice sent to Defendants. In the August 2022 letter sent by the City to Mawson, the City asserted that, in response to a request by the City in 2021, MEAG had begun the development of a substation that would provide Mawson, whose leasehold interest in the Premises was subsequently assigned to CSRE, with the requested 150 MW power availability, and that MEAG was "continuing to make progress toward meeting a completion date of the new substation in 2023." (Docket entry no. 4-4, at 2.) In the October 2022 letter sent by the City in response to CleanSpark's request (docket entry no. 4-2), the City provided the confirmation requested by CleanSpark that it would continue to work with CleanSpark "in good faith in the coming months on a mutually agreeable Contract for Electric Power Service to address . . . [a]vailability of 150 MW of additional power subject to energy being available from MEAG as planned." (Docket entry no. 4-3 at 1 (emphasis added)). Drawing all inferences in favor of Plaintiffs, these letters, taken together, plausibly suggest that all parties anticipated completion of a substation at the Premises that would provide the additional 150 MW of power called for by the Megawatt Earnout provision, such that Plaintiffs' December 2022 notice, in light of the October 2022 letter, should have constituted "reasonably acceptable" written confirmation "that it will be able to utilize at least an additional 150 MW of power on the land."

Defendants advance several arguments in opposition to this conclusion. Defendants contend that the August 2022 letter is not personally addressed to Defendants, that the letter predated execution of the Agreement, rendering it implausible as a matter of law that the letter constitutes the Power Confirmation called for by the Agreement, and that Plaintiffs did

not send a timely demand, citing the October 2022 letter. (Docket entry no. 17 ("Defs. Mem.") at 13-14, 16-17.) There is no specific requirement in the Agreement, however, that the Power Confirmation post-date the effective date of the Agreement or be explicitly addressed to Defendants, and, as explained above, the question on this motion practice is whether the two letters, taken together, support plausibly Plaintiffs' claim that the Power Confirmation condition had been satisfied in a timely fashion. (See Pls. Mem. at 4-5 (arguing that, "[d]espite the letters of August 2, 2022 and October 7, 2022," Defendants asserted that the December 2022 notice did not constitute "reasonably acceptable" written confirmation).)

Defendants also argue that Plaintiffs' December 2022 notice was too delayed, in view of Mawson's August 2022 receipt of the City's letter, to comply with the requirement in the Megawatt Earnout provision that the Power Confirmation be "immediately" delivered to the other party, and that Plaintiffs failed to comply with the Agreement's notice requirements in delivering the December 2022 notice. (Defs. Mem. at 14, 16-17.) Under New York law, however, only a material breach of contract will excuse the non-breaching party's performance. Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171, 187 (2d Cir. 2007) (citation omitted). Defendants do not assert that either purported breach by Plaintiffs constitutes material breach, such that Defendants should be excused from their obligation to pay the Megawatt Earnout and, in any case, material breach is an affirmative defense that is generally inappropriate for resolution at the motion to dismiss stage. See Doe 1 v. Deutsche Bank Aktiengesellschaft, 671 F. Supp. 3d 387, 400-401 (S.D.N.Y. 2023).

For the foregoing reasons, Defendants' Motion is denied insofar as it seeks dismissal of Plaintiffs' breach of contract claim premised on Defendants' failure to pay the Megawatt Earnout following timely receipt of an allegedly conforming Power Confirmation.

Best Efforts to Obtain Power Confirmation

Plaintiffs also allege that Defendants breached Section 19.02(d) of the Agreement, which provided that "[t]he Parties must use best efforts to obtain Power Confirmation of the additional 150 MW." (Agreement § 19.02(d); Compl. ¶ 19.) Although "New York law on 'best efforts' clauses is 'far from clear,'" courts have generally interpreted "best efforts" clauses to impose "at least an obligation to act in good faith in light of own's own capabilities." Cruz v. FXDirectDealer, LLC, 720 F.3d 115, 124 (2d Cir. 2013); see also Advanced Water Techs., Inc. v. Amiad U.S.A., Inc., 457 F. Supp. 3d 313, 322 (S.D.N.Y. 2020) (explaining that some courts have instead required that a party "perform as well as the average prudent comparable businessperson" (internal quotation marks and citations omitted)).

The Court finds that Plaintiffs have also plausibly alleged Defendants' breach of Article 19.02(d)'s best efforts requirement. Plaintiffs allege that, at no point following Defendants' refusal of the December 2022 Notice, did Defendants "use any efforts, much less their 'best efforts' to obtain their further requested . . . Power Confirmation." (Compl. ¶ 19.) Plaintiffs further argue that Defendants' June 2023 email correspondence, appended to the Complaint, plausibly suggests that Defendants believed that they would "be able to utilize at least 150 MW of power" in accordance with Article 19.02, but were consciously avoiding obtaining what would be, in their minds, a "reasonably acceptable" written confirmation of the same because of an ongoing dispute between the City and MEAG, neither of which is a party to the contract between Plaintiffs and Defendants. (Docket entry no. 4-8, at 1.) Specifically, Zach Bradford, Chief Executive Officer of CleanSpark, asserted that CleanSpark "ha[d] been very clear on why [a written document] ha[d] not been received and therefore why the trigger

[provided for in the Megawatt Earnout provision] ha[d] not occurred," explaining that the City had asked CleanSpark not to sign a contract for power service because it would harm the City's negotiations with MEAG.  (Id.)

In view of at least these circumstances, Plaintiffs have plausibly alleged that Defendants failed to "act in good faith in light of [their] own capabilities" to obtain a Power Confirmation, as contractually required.  Defendants' Motion is therefore denied to the extent it seeks dismissal of this aspect of Plaintiffs' breach of contract claim.

Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendants also argue that it is unclear if Plaintiffs intended to assert a claim for breach of the implied covenant of good faith and fair dealing and, to the extent they did, the claim should be dismissed because Plaintiffs allege no facts in support of it.  (Defs. Mem. at 17-18.)  Because Plaintiffs do not respond to this argument in their briefing, the Court deems this issue to be waived.  Kao v. British Airways, PLC, No. 17-CV-0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) (holding that "Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue" (citation omitted)).  Accordingly, to the extent Plaintiffs intended to assert a claim for breach of the implied covenant, the claim is dismissed.

Damages

Defendants next argue that Plaintiffs' requests for punitive and consequential damages (Compl. ¶¶ 34-36) are improper in the instant case and should be dismissed.

### Punitive Damages

Defendants first argue that punitive damages are not available in the instant case because a plaintiff seeking punitive damages in the context of a breach of contract claim must

establish, inter alia, that the alleged conduct is actionable as an independent tort and is part of a pattern directed at the public generally.  (Defs. Mem. at 19 (citing Matter of Part 60 Put-Back Litig., 36 N.Y.3d 342, 360 (2020)).  Plaintiffs also failed to respond to this argument in their opposition briefing, which failure alone warrants dismissal of the request for punitive damages.  (See generally Pls. Mem.; Compl. ¶ 36); Kao, 2018 WL 501609, at *5.  Moreover, because Plaintiffs do not appear to plead tortious conduct independent of their breach of contract claim, nor allege a "pattern [of conduct] directed at the public generally[,]" Matter of Part 60 Put-Back Litig., 36 N.Y.3d at 360, the request for punitive damages fails on the merits.  The Motion is therefore granted to the extent it seeks dismissal of Plaintiffs' request for punitive damages.

Consequential Damages

As consequential damages, Plaintiffs seek lost profits on the basis that, "[h]ad Defendants timely paid the earnout obligations of the Agreement, Plaintiffs would have been able to utilize the funds in many ways," e.g., "buying other land for development" or "further developing its existing infrastructure at its other facilities," and that these efforts would have generated "significantly more revenue from increased mining activities and colocation agreements."  (Compl. ¶ 34.)  Plaintiffs also seek attorneys' fees, costs, and expenses, on the grounds that these damages were "a reasonably foreseeable consequence of Plaintiffs being forced to file for both arbitration and for legal suit as a result of Defendant's bad faith refusal to pay for the full loss."  (Id. ¶ 35.)

Defendants argue that Plaintiffs have failed to plead sufficient facts to establish that these requested damages were foreseeable and within the parties' contemplation at the time of contracting, as required to recover consequential damages.  (Defs. Mem. at 20 (citing Martin v. Metro. Prop. & Cas. Ins. Co., 238 A.D.2d 389, 390 (N.Y. App. Div, 2d Dep't 1997)).)  The

Court agrees; because Plaintiffs have failed to allege that the particular consequential damages sought "were the natural and probable consequences of the breach, and were contemplated at the time the contract was executed," Safka Holdings LLC v. iPlay, Inc., 42 F. Supp. 3d 488, 493 (S.D.N.Y. 2013) (gathering cases), instead asserting entitlement to such damages in a conclusory fashion (Compl. ¶¶ 34-35), Defendants' Motion is granted to the extent it seeks dismissal of Plaintiffs' request for consequential damages.

Leave to Amend

Plaintiffs request that, if dismissal is granted, they be given leave to amend any deficiencies in the Complaint. (Pls. Mem. at 12-14.) Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). There is a particularly strong preference for allowing amendment when "the plaintiff has not had the benefit of a court ruling with respect to the deficiencies of its pleading." Allianz Glob. Invs. GmbH v. Bank of Am. Corp., 473 F. Supp. 3d 361, 365 (S.D.N.Y. 2020); see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies.").

Plaintiffs, accordingly, may move for leave to file an amended complaint that addresses the foregoing deficiencies with respect to their claim for breach of the implied covenant of good faith and fair dealing, to the extent Plaintiffs intended to assert such a claim, and/or Plaintiffs' requests for punitive and consequential damages. Any such motion must be filed within 30 days from the date of this Memorandum Order, and must comply with all federal, state, and local rules, including S.D.N.Y. Local Civil Rule 15.1. Should Plaintiffs fail to file a timely motion for leave to amend, dismissal of the foregoing elements of the Complaint shall be

with prejudice. If Plaintiffs file such a motion, it shall be briefed in accordance with S.D.N.Y. Local Civil Rule 6.1.

### CONCLUSION

For the foregoing reasons, Defendants' Motion is granted in part and denied in part. Specifically, Defendants' Motion is granted insofar as it seeks dismissal of any claim for breach of the implied covenant of good faith and fair dealing and dismissal of Plaintiffs' requests for punitive and consequential damages. The Motion is denied in all other respects.

This case will be referred to the designated magistrate judge for general pretrial management following entry of this Memorandum Order. This Memorandum Order resolves docket entry no. 16.

SO ORDERED.

Dated: New York, New York
      September 11, 2025

      /s/ Laura Taylor Swain
      LAURA TAYLOR SWAIN
      Chief United States District Judge